IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEP T. TRAN,<br>              Plaintiff,<br><br>     v.<br><br>SENECA INSURANCE COMPANY, INC.,<br>              Defendant. | CIVIL ACTION<br><br><br><br>NO.  14-5491 |

DuBois, J.                                                                                                October 14, 2015

**M E M O R A N D U M**

## I.   INTRODUCTION

This case arises out of a dispute over whether a property loss sustained by Dep T. Tran ("plaintiff") is covered under an insurance policy issued by Seneca Insurance Company, Inc. ("Seneca," or "defendant"). Tran avers that Seneca denied coverage (1) in breach of contract, and (2) in bad faith. Presently before the Court is defendant's Motion for Summary Judgment as to both claims pursuant to Federal Rule of Civil Procedure 56, filed May 29, 2015. For the reasons set forth below, the Court denies defendant's Motion as to the breach of contract claim and grants the Motion as to the bad-faith claim.

## II.   BACKGROUND

Dep T. Tran is the owner of commercial properties located at 611-615 East Baltimore Avenue, Lansdowne, Pennsylvania. The buildings are separated by a masonry wall and share one roof, divided by a parapet. Pl.'s Resp. at 5. Tran rents the lower floor of 611 East Baltimore Avenue to tenants who own and operate a nail salon. *Id.* Seneca is an insurance company headquartered New York, New York. Def.'s Mot. ¶ 12, at 2.

Seneca issued Policy No. SCC 2014533 (the "Policy") to Tran. The Policy insures against "direct physical loss of or damage to" Tran's properties. Pl.'s Resp. at 6. Of particular significance to this case are the following coverage exclusions in Special Form CP 10 30 06 07:

>   B. Exclusions
>
>   1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or events that contributes concurrently or in any sequence to the loss.
>       . . .
>       g. Water
>       . . .
>           (3) Water that backs up or overflows from a sewer, drain or sump;
>       . . .
>   2. We will not pay for loss or damage caused by or resulting from any of the following:
>       . . .
>       d.    (1) Wear and tear;
>             (2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;
>       . . .
>   3. We will not pay for loss or damage caused by or resulting from any of the following . . . . But if an excluded cause of loss that is listed . . . results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.
>       . . .
>       c. Faulty, inadequate or defective:
>       . . .
>           (4) Maintenance;

Def.'s Mot. Ex. D, at 3, 5; Pl.'s Resp. Ex. E.

On September 4, 2012, Tran's tenant reported to the East Lansdowne Fire Department ("ELFD") that the building was at risk of imminent collapse. Def.'s Mot., Statement of Undisputed Facts ¶ 17. When the ELFD was dispatched to the property, the responders observed bowing of the roof's membranes and approximately 2,000 gallons of standing water on the building's flat roof structure. *Id.* ¶¶ 18-19. The ELFD responders used a pump to begin removing the water, and also cut relief holes in the roof allowing water to flow into the building. *Id.* ¶¶ 20-

21. According to an estimate by Home & Business Adjustment Co., the incident caused approximately $135,379.39 in damage to the property. Pl.'s Resp. Ex. B.

Mellon Certified Restoration ("Mellon") was hired by the township to perform mitigation services on the property. Mellon issued a report prepared by Property Loss Specialist Charles Merkel (the "Mellon Report"), in which he opined on the cause of loss and estimated the cost of the required mitigation services. Pl.'s Resp. Ex. C.

Tran filed a claim with Seneca, and Seneca promptly assigned John McHenry III of McHenry Adjustment ("McHenry") to adjust the loss. Def.'s Mot., Statement of Undisputed Facts ¶ 22; Pl.'s Resp. at 7. McHenry conducted an investigation on September 7, 2012, *id.* ¶ 23. On September 28, 2012, Seneca sent an initial reservation of rights letter to Tran. *Id.* ¶ 28. Seneca also requested various documents from Tran, including police and fire reports. Pl.'s Resp. at 7.

In February 2013, Seneca retained Hudson International Consultants and Engineers ("Hudson") to inspect the roof and investigate the cause of loss. In a report prepared by Mary McElroy, P.E. (the "Hudson Report"), Hudson concluded that the loss was caused by obstructed drainage and improper maintenance. Def.'s Mot., Statement of Undisputed Facts ¶ 32.

On June 27, 2013, Seneca deposed Henry Le, Tran's son who has power of attorney on Tran's behalf. Pl.'s Resp. at 8; *see* Pl.'s Resp. Ex. D. Seneca requested additional documentation at the deposition, including, *inter alia*, any appraisal reports for the property, Certificates of Occupancy, and any correspondence with the insurance agent who helped plaintiff obtain insurance from Seneca. Pl.'s Resp. Ex. I. Seneca confirmed its request by letter dated July 10, 2013. *Id.*

After concluding its investigation, Seneca denied coverage by letter dated December 27, 2013. *Id.*

## III. LEGAL STANDARD

The Court will grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether . . . there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

## IV. DISCUSSION

Defendant moves for summary judgment on both of plaintiff's claims: (1) breach of contract, and (2) bad faith. For the reasons set forth below, the Court denies defendant's Motion as to the breach of contract claim and grants the Motion as to the bad-faith claim.

### A. BREACH OF CONTRACT

For a breach of contract claim, "summary judgment is appropriate only where the contractual language is unambiguous[.]" *Mylan Inc. v. SmithKline Beecham Corp.*, 723 F.3d 413,

4

418 (3d Cir. 2013) (citing *Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co.*, 180 F.3d 518, 521 (3d Cir. 1999)). "If the nonmoving party presents a reasonable alternative reading of the contract, then a question of fact as to the meaning of the contract exists which can only be resolved at trial." *Id.* (quoting *Newport Assocs. Dev. Co. v. Travelers Indem. Co.*, 162 F.3d 789, 792 (3d Cir. 1998)). Under Pennsylvania law, "[a] contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004) (emphasis added) (citing *Hutchison v. Sunbeam Coal Corp.,* 519 A.2d 385, 390 (Pa. 1986)).

When interpreting an insurance policy, Pennsylvania courts "employ an analysis which . . . recognizes that most insurance transactions are not freely bargained between equals but are largely adhesive in nature." *Bishops, Inc. v. Penn Nat. Ins.*, 984 A.2d 982, 989 (Pa. Super. Ct. 2009). Specifically, the insurer "bears the burden of establishing the applicability of an exclusion in an insurance contract," and exclusions "are always strictly construed against the insurer and in favor of the insured." *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206-207 (3d Cir. 2001). "The proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured." *Essex Ins. Co. v. Starlight Mgmt. Co.*, 198 F. App'x 179, 183 (3d Cir. 2006) (quoting *Britamco Underwriters, Inc. v. Weiner,* 636 A.2d 649, 651 (Pa. Super. Ct. 1994)).

In this case, Seneca argues that it did not breach its contract with Tran because two exclusions preclude coverage: (1) the exclusion for "[w]ater that backs up or overflows from a sewer, drain or sump" (hereinafter the "Water Exclusion"); and (2) the exclusion for "faulty, inadequate or defective . . . [m]aintenance" (hereinafter the "Maintenance Exclusion"). The

Court denies defendant's motion for summary judgment because there is a genuine dispute of material fact as to the applicability of each exclusion.

   **1. The Water Exclusion**

Seneca argues that it is entitled to summary judgment because the Water Exclusion precludes coverage for plaintiff's insurance claim. The Court rejects this argument and denies the Motion for Summary Judgment on this ground because the Water Exclusion is ambiguous. Specifically, the exclusion is reasonably susceptible to four different interpretations that materially affect plaintiff's right to recover under the Policy.

   a. First, Seneca interprets the exemption as applying to any obstruction of any drainage system—including water that collects at the mouth of a blocked roof drain. Seneca would prevail under this interpretation because there is no dispute that the water collected on plaintiff's roof as a result of blocked drainage. *See* Mellon Report, Pl.'s Resp. Ex. C ("The cause for the ponding of water on the roof appears to [be] a result of clogged drains."); Hudson Report, Def.'s Mot. Ex. C, at 10 ("The blockage of the roof drains . . . with debris resulted in standing water on the roof.").

   b. Courts that have decided this issue have held that water that "backs up or overflows *from* a sewer, drain or sump" may only refer to water whose *source* is a sewer, drain, or sump—i.e., water that is discharged by the drainage system. Under this construction, the Policy language "does not include within its meaning water that is unable to enter a drain or sewer (water that is backed up) due to a blockage, but instead only refers to water that, after having entered a drain or sewer, is diverted back up out of it." *Drutz v. Scottsdale Ins. Co.*, No. Civ. WMN-10-3499, 2012 WL 665984, at *5 (D. Md. Feb. 28, 2012); *see also Dent v. Allstate Indem. Co.*, 82 Va. Cir. 386 (Va. Cir. Ct. 2011) ("[A]t least some water must enter the drain or pipe for the [exclusion]

language to apply."). Tran would prevail under this interpretation because there is no evidence in the record that the water on plaintiff's roof came "from" a sewer, drain, or sump.

    c. Courts that have decided this issue have also concluded that the term "backs up" refers to water that reverses its natural or intended flow within a drainage system. *See, e.g.*, *Gammons v. Tennessee Farmers Mut. Ins. Co.*, No. 85-334-II, 1986 WL 13039, at *3 (Tenn. Ct. App. Nov. 19, 1986) ("[T]he phrase 'water which backs up through sewers or drains' refers simply to water in a sewer or drain that flows in a direction opposite to the intended and usual flow."); *Thompson v. Genis Bldg. Corp.*, 394 N.E.2d 242, 245 (Ind. App. 1979) ("[T]he plain and ordinary meaning of 'backing up' is 'to rise and overflow backward of water accumulating when checked.'" (quoting Webster's New International Dictionary 199 (2nd ed. 1942))).[1] Oxford English Dictionary defines "back up" as, *inter alia*, "to cause running water to accumulate and become deeper," or alternatively "[t]o move backwards[.]" Either is a reasonable interpretation of an undefined term in the contract. Under this interpretation, Tran would prevail because there is no evidence in the record that the water on plaintiff's roof "back[ed] up" and reversed its flow through the rooftop drain.

    d. And fourth, Tran argues that the Water Exclusion only excludes coverage "for surface water that enters the dwelling from beneath the ground." Pl.'s Resp. at 11. Seneca placed the term "drain" between the terms "sewer" and "sump." "Drain," in context, may exclusively refer

---

[1] The Court notes that there is some disagreement over this interpretation of "backs up." *See Surabian Realty Co. v. NGM Ins. Co.*, 971 N.E.2d 268, 272 (Mass. 2012) (recognizing the controversy); *see also Front Row Theatre, Inc. v. Am. Mfr's. Mut. Ins. Cos.*, 18 F.3d 1343, 1348 (6th Cir. 1994) ("[W]e reject the defendants' claim that the exception only applies to water that actually reverses its flow in the pipes."); *Jennings v. Hartford Fire Ins. Co.*, No. Civ. 90-3125, 1991 WL 68019, at *2 (E.D. Pa. Apr. 25, 1991).

7

to systems, like sewers and sumps, that are designed to remove ground- or subsurface water.[2] Under this interpretation, Tran would prevail because the exclusion "does not apply to roofing systems." *Id.*

The Court notes that other courts have found similar insurance policy exclusions unambiguous and granted summary judgment in favor of insurers. *See, e.g.*, *St. Joseph's Condo. Ass'n, Inc. v. Pac. Ins. Co.*, No. Civ. 07-3959, 2008 WL 4717463, at *4 (E.D. La. Oct. 27, 2008); *Scorpio v. Underwriters at Llyod's, London*, No. CA 10-325 ML, 2012 WL 2020168, at *3 (D.R.I. June 5, 2012). The Court disagrees with these cases. Ruling on a motion for summary judgment "implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson*, 477 U.S. at 252. In this case, Seneca "bears the burden of establishing the applicability of an exclusion," and the exclusion must be "strictly construed against the insurer and in favor of the insured." *Nationwide Mut. Ins. Co.*, 258 F.3d at 206-207. Measured against this demanding standard, the Court concludes that a reasonable jury could find that the Water Exclusion does not preclude insurance coverage for plaintiff's loss. Accordingly, a genuine issue of material fact remains for trial. *Anderson*, 477 U.S. at 249; *accord Spece v. Erie Ins. Grp.*, 850 A.2d 679, 683 (Pa. Super. Ct. 2004) (finding a similar exclusion "ambiguous").

**2. The Maintenance Exclusion**

Seneca argues that its decision to deny coverage did not breach the insurance contract because the water collected on plaintiff's roof as a result of inadequate maintenance. The Maintenance Exclusion provides that Seneca "will not pay for loss or damage caused by or resulting from . . . [f]aulty, inadequate or defective . . . [m]aintenance." Def.'s Mot. Ex. D, at 5;

---

[2] Pursuant to the canon of *noscitur a sociis*, the meaning of a word in a contract may be controlled by the surrounding language. Words are "known by the company they keep." *See, e.g.*, *Com. ex rel. Fisher v. Philip Morris, Inc.*, 4 A.3d 749, 756 n.9 (Pa. Commw. Ct. 2010).

Pl.'s Resp. Ex. E, at 5. The Court concludes that there is a genuine dispute as to the adequacy of the roof maintenance.

Seneca cites the Hudson Report in support of its argument: "Poorly maintained roof drainage was the cause of the blockage; periodic maintenance of the roof membrane (removal of debris) and drainage (clearing the drains, coverings or cages) would have prevented the accumulation of several inches of standing water on the roof and the incident . . . ." Def.'s Mot. Ex. C, at 9.

In response, plaintiff cites the deposition of Henry Le, Ms. Tran's son, who maintained the property for his mother. The deposition transcript reads, in relevant part, as follows:

> Q. So you personally would perform maintenance on the property?
> **A. Yes**
> Q. What type of maintenance, if any, was done on the roof in 2011?
> . . .
> **A. The roof was new. So only very, very so often I would go up there and I check it. But the roof, like I said, the roof was new, so there wasn't much for me to do. Only thing I had to do, two, three months—I don't remember exactly—before the incident, there was a flat top, so one of the sheet was off a little, it was crack a little, basically, so I used tar to patch up the edges, so it is nice and sealed.**
> …
> Q. Did you ever do any maintenance on the roof drains, at any time?
> **A. It was never clogged. I mean, every time I go up there, it was nice and dry. And I look around. If there was trash, I picked it up. That's it.**
> Q. My question was did you ever do any maintenance on the roof drains?
> **A. No.**
> MR. WHEELER: You mean other than what he just talked about? Is that right?
> MR. LEVY: Well, my question was—
> MR. WHEELER: You know, I'm not exactly sure what you mean by maintenance of the drains. I don't know what maintenance you do on the drains. He said he would go up and check and if there was trash, he would remove it. Right?
> THE WITNESS: Yes.
> BY MR. LEVY:
> Q. Well, let me ask you a question. Was there trash on the roof? Is that what you were referring to?
> **A. A couple leaves, here and there. Not much.**
> Q. That's what you would have to remove from the roof?
> **A. Yes.**

> Q.  Did you ever have to remove anything from the drains, any trash or anything?
> **A.  No.**

Pl.'s Resp. Ex. D, at 17-18.

The Hudson Report commissioned by Seneca stated that a proper maintenance regimen includes "periodic maintenance of the roof membrane (removal of debris)[.]" Def.'s Mot. Ex. C, at 10. According to Le's undisputed deposition testimony, Le did in fact periodically remove debris from the roof. Moreover, although Le did not clear out the drains, he said he never had cause to do so because he never observed any blockage, never saw pooling water when he was on the roof, and had no prior knowledge of any problems with the drainage.

There is no dispute that the water collected on plaintiff's roof. But that fact alone does not mean that maintenance conducted by Le was, by definition, "inadequate." A contrary interpretation would make the policyholder, in effect, strictly liable for any damage resulting from an obstructed drain. *See Berry v. Commercial Union Ins. Co.*, 87 F.3d 387, 392 (9th Cir. 1996) (holding that flushing fungicide through a piping system was not "inadequate . . . maintenance" because plaintiff "could not have been negligent in doing so and we will not read the exclusion to make her strictly liable . . . ."). Based on the record before the Court, a reasonable jury could determine that maintenance conducted by Le was adequate under the circumstances, and that the drainage system become obstructed despite the reasonable steps taken to maintain the roof.

In addition, there is a material dispute about the roof's overall condition. Mr. Le testified that the roof was "new," and thus did not require extensive or frequent maintenance. Pl.'s Resp. Ex. D, at 17. This testimony is corroborated by the Mellon report, which stated that the roof was "3 to 5 years old" and "overall appeare[d] to be in sound condition." Pl.'s Resp. Ex. C, at 3. These statements contradict Hudson's conclusion that the roof covering was in "poor condition"

as a result of chronic neglect. Def.'s Mot. Ex. C, at 9-10. Viewed in a light most favorable to the non-moving party, particularly upon consideration of the roof's age and condition, a reasonable jury could conclude that Le's maintenance activities were adequate under the circumstances.

### 3. Conclusion – Breach of Contract Claims

On the record before the Court, a genuine dispute of material fact exists as to the applicability of the Water Exclusion and the Maintenance Exclusion. Accordingly, Seneca's motion for summary judgment is denied as to the breach of contract claim.

## B. BAD FAITH

Pennsylvania statute provides that a court may award interest, punitive damages, and attorney fees if it finds that an insurer acted in bad faith toward the insured. 42 Pa. Cons. Stat. Ann. § 8371. To prevail on a claim of bad faith, a plaintiff must show, through clear and convincing evidence, "the absence of a reasonable basis for denying benefits of the policy *and* the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *United States Fire Ins. Co. v. Royal Ins. Co.,* 759 F.2d 306, 309 (3d Cir. 1985) (emphasis added).

"[T]he 'clear and convincing' standard requires that the plaintiff show that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *Hayden v. Westfield Ins. Co.*, No. CIV.A. 12-0390, 2013 WL 5781121, at *11 (W.D. Pa. Oct. 25, 2013) *aff'd,* 586 F. App'x 835 (3d Cir. 2014) (quoting *J.C. Penney Life Ins. Co. v. Pilosi,* 393 F.3d 356, 367 (3d Cir. 2004)). "The plaintiff's burden in opposing a summary judgment motion is commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden

at trial." *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999), *aff'd*, 234 F.3d 1265 (3d Cir. 2000); *see Anderson*, 477 U.S. at 252.

The insurer need not "demonstrate its investigation yielded the correct conclusion, or that its conclusion more likely than not was accurate." *Krisa v. Equitable Life Assurance Soc'y*, 113 F. Supp. 2d. 694, 704 (M.D. Pa. 2000) (quoting *Cantor v. Equitable Life Assurance Soc'y*, No. Civ. 97–CV–5711, 1999 WL 219786, *3 (E.D. Pa., April 12, 1999)). It need only conduct "a review or investigation sufficiently thorough to yield a reasonable foundation for its action." *Id.*

In this case, plaintiff argues that Seneca, in bad faith, used "unfair investigation techniques" and intentionally "delayed the payment of her claim." Pl.'s Resp. at 14. According to plaintiff, these actions reveal that Seneca "never intended to pay a dime on Ms. Tran's loss . . . ." *Id.* On the instant Motion, plaintiff avers that there is a dispute of material fact as to two particular allegations of bad faith: (1) that Seneca and its agents never attempted to estimate the size of Tran's loss, and (2) that Seneca unreasonably delayed the investigation. *Id.*

### 1. Estimation of the Loss

The record does not support plaintiff's assertion that Seneca was indifferent to the amount of loss, or "never intended" to honor the Policy. According to a letter dated February 7, 2013, sent by Seneca's adjuster, McHenry, Seneca received and considered Tran's estimate. "We acknowledge and thank you for your e-mail of January 21, 2013 containing your building repair estimate submitted on behalf of the policyholder totaling $135,379.39. Please be assured that we have submitted your estimate to the involved insurance carrier for their review." Def.'s Mot. Ex. I, at 9.

The Court concludes that Seneca conducted a reasonable investigation under the circumstances. Seneca employed both McHenry and Hudson to investigate the loss, reviewed the

fire department's investigation, received plaintiff's estimate for the loss, examined Le under oath, and requested additional documents from plaintiff over the course of more than a year. Based on the entire record before the Court, there is no clear and convincing evidence that Seneca or its agents were indifferent to the amount of plaintiff's loss or conducted the investigation in a way that suggests Seneca never intended to honor the Policy.

### 2. Delay of the Investigation

Plaintiff also alleges that Seneca unreasonably delayed the investigation of the insurance claim in bad faith. "Under Pennsylvania law, investigative delay is a relevant factor in determining whether an actor's conduct was in bad faith, but it is not dispositive." *Lublin v. Am. Fin. Grp., Inc.*, 960 F. Supp. 2d 534, 541 (E.D. Pa. 2013). The insured must demonstrate that "the delay is attributable to the defendant, that the defendant had no reasonable basis for the actions it undertook which resulted in the delay, and that the defendant knew or recklessly disregarded the fact that it had no reasonable basis to deny payment." *Hayden v. Westfield Ins. Co.*, No. CIV.A. 12-0390, 2013 WL 5781121, at *10 (W.D. Pa. Oct. 25, 2013) *aff'd,* 586 F. App'x 835 (3d Cir. 2014) (quoting *Thomer v. Allstate Ins. Co.,* 790 F. Supp. 2d 360, 370 (E.D. Pa. 2011)). If the delay is "attributable to the need to investigate further or even to simple negligence, no bad faith has occurred." *Id.* (quoting *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 588-589 (E.D. Pa. 1999)).

In this case, Seneca assigned an adjuster to investigate the loss immediately after being notified of the incident. Def.'s Mot. Ex. F. The adjuster performed an inspection within three days of the loss. *Id.* Ex. G.

Plaintiff correctly states that Hudson did not begin its investigation until March 5, 2013— approximately six months after the incident. *Id.* Ex. C. However, Seneca's adjuster, McHenry,

had requested documents and Tran's cooperation in a series of letters to Tran's representative sent between October 2012 and February 2013. *Id.* Ex. I, at 2-10. Specifically, McHenry sent letters dated October 4, 2012, October 30, 2012, December 10, 2012, and February 7, 2013. *See* Letter dated February 7, 2013, *id.* at 8 ("We continue to await a response from your company and the policyholder to the insurance carrier's request for materials and information set forth in our prior letters."). Seneca did not receive a response from Tran, and retained Hudson on or around February 19, 2013—shortly after McHenry sent the letter dated February 7, 2013. *Id.* Ex. J.

Seneca denied plaintiff's claim in a letter dated December 27, 2013. Although this was months after the Hudson investigation, the undisputed evidence demonstrates that Seneca continued to investigate during this period as well. For example, Seneca examined Le under oath in June 2013. Seneca also requested documents from plaintiff following the deposition and did not receive a response, even after Seneca confirmed its request in a letter dated July 10, 2013, Pl.'s Resp. Ex. I, and sent a follow-up letter on October 4, 2013. Def.'s Mot., Statement of Undisputed Facts ¶¶ 39-41.

The record before the Court does not provide clear and convincing evidence of bad faith, even when viewed in a light most favorable to the non-moving party. Although the investigation took over a year, the delays were not solely "attributable to the defendant." *Hayden*, 2013 WL 5781121, at *13 (holding that investigative delay was not unreasonable where plaintiff "failed to provide requested documentation"); *see also Lublin*, 960 F. Supp. 2d at 541 (holding that delay is permissible while the insurance company waits for the insured party to send requested documents). Accordingly, the Court grants defendant's motion for summary judgment as to the bad-faith claim.

## V. CONCLUSION

The Court concludes that a genuine dispute of material fact exists as to the applicability of the Water and Maintenance Exclusions. Accordingly, that part of defendant's Motion which seeks summary judgment as to the breach of contract claim is denied. The Court further concludes that Seneca did not act in bad faith in its investigation into plaintiff's claim and denial of coverage. The Court therefore grants that part of defendant's Motion that seeks summary judgment as to the bad-faith claim.

An appropriate order follows.